IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

REBECCA PALMER,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA; WESTERN EXECUSTAFF, INC. LONG-TERM DISABILITY PLAN,

    Defendants.

No. C 04-2735 MJJ

**ORDER FINDING THAT ABUSE OF DISCRETION IS THE APPROPRIATE STANDARD OF REVIEW**

## INTRODUCTION

Before the Court are cross motions regarding the standard of review to be employed in this claim for disability benefits under ERISA. For the following reasons, the Court **GRANTS** Defendants' Motion, **DENIES** Plaintiff's Motion, and finds that the abuse of discretion standard applies to Plaintiff's claim.

## FACTUAL BACKGROUND

Plaintiff Rebecca Palmer was a Masters' level cell biologist working for Western Execustaff, a staffing company that hired her out for cell biology positions. Her last job was working for Ceretek as a Senior Research Associate. In 1990, Plaintiff had carpal tunnel decompression surgery, but in 2001, Plaintiff again developed right carpal tunnel syndrome and repetitive stress injury to her right hand. This injury affected her ability to pipette, an activity she performed throughout the day in the course of her job. Plaintiff submitted a claim under the short term disability plan in May 2001

1  and received benefits through August 31, 2001.  In July 2001, her claim was forwarded to the Long
2  Duration Unit of Unum for review of her file for long-term disability.

3  Unum advised Plaintiff of its decision to deny her claim for long-term disability benefits by
4  letter dated December 12, 2001.  Unum provided the applicable definition of disability and a
5  summary of the medical and vocational information considered, including a Labor Market Survey.
6  The letter from Unum stated that although Plaintiff might be precluded from performing the material
7  duties of her job with Execustaff, it did not appear Plaintiff would be precluded from performing the
8  material duties of a cell biologist as generally performed in the labor market.  The letter set forth
9  various accommodations available to Plaintiff to allow her to perform the task of pipetting, including
10 utilizing automatic pipettors, using her left hand, or using pipettors that are designed to reduce
11 fatigue.  Additionally, the letter invited Plaintiff to send additional information to Unum for review
12 and instructed Plaintiff how to submit an appeal.

13 Plaintiff appealed Unum's determination by letter dated December 28, 2001.  In the letter,
14 Plaintiff requested that Unum provide certain documents, and that Unum delay any determination on
15 her claim until 90 days after providing the requested documents.  Unum acknowledged receipt of
16 Plaintiff's request for an appellate review, and provided the requested documents by letter dated
17 January 2, 2002. In a letter dated February 1, 2002, a Senior Appeals Specialist notified Plaintiff of
18 the time frame for the review.  By letter dated February 27, 2002, the Senior Appeals Specialist
19 advised Plaintiff that the time for Unum to render its decision needed to be extended an additional
20 60 days.  Unum notified Plaintiff that the denial of her claim for long-term disability benefits was
21 upheld on appeal by a letter dated April 1, 2002.  This letter again set forth the definition of
22 disability and detailed the medical and vocational information on which the denial was based.
23 Additionally, the letter repeated that reasonable accommodations that could be made for the task of
24 pipetting, including automatic pipettors.

25 Following the appeal, Plaintiff submitted additional information for Unum to review,
26 included in which was a vocational report prepared by Rheta Barton King.  Ms. King followed up
27 with several of the biologists who were previously contacted, one of which said they had never
28 heard of someone pipetting with their minor hand, and another of which sated that it is possible to

pipette with your minor hand, and had done so himself. Unum advised Plaintiff by letter dated November 22, 2002 that the previous decision to deny benefits was correct and would be upheld. The letter again stated that Plaintiff could limit pipetting with her right hand and should be able to use her left hand or be accommodated by utilizing an automatic pipettor.

Plaintiff thereafter filed the instant lawsuit for benefits under 29 U.S.C. § 1132(a)(1)(B). Defendants contend that the Court must review its disability determination under an abuse of discretion standard, while Plaintiff argues that Defendants have a conflict of interest that warrants a less deferential, *de novo* review by the Court.

## LEGAL STANDARD

"[A] denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999). When the plan confers discretion on the plan administrator to determine eligibility for benefits, courts review the denial of benefits for abuse of discretion. *Id.* The "default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) (*en banc*).

The Ninth Circuit has held that the abuse of discretion standard of review can be "heightened" by a plan administrator's conflict of interest. *See Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322 (9th Cir. 1995). There is an apparent conflict of interest where a long-term disability policy is both funded and administered by defendant. *See Bendixen*, 185 F.3d at 943; *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 797 (9th Cir. 1997). "Nevertheless, the presence of a conflict does not automatically remove the deference [courts] ordinarily accord to ERISA administrators who are authorized by the plan to interpret a plan's provisions." *Id*. "[O]nly a 'serious' conflict would heighten scrutiny." *Bendixen*, 185 F.3d at 943. In *Bendixen*, the court explained:

> In order to establish a serious conflict, the beneficiary has the burden to come forward with "material, probative evidence, beyond the mere fact of the apparent

3

1   conflict, tending to show that the fiduciary's self-interest caused a breach of the
2   administrator's fiduciary obligations to the beneficiary." If the beneficiary cannot
    satisfy this burden, the district court should apply the traditional abuse of discretion
3   review. If the beneficiary does satisfy the burden, the plan then bears the burden to
    show the conflict of interest did not affect the decision to deny benefits.

4   *Id*. (quoting *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322 (9th Cir. 1995)).

5   The Ninth Circuit has found "material, probative evidence" of a serious conflict of interest to

6   consist of "inconsistencies in the plan administrator's reasons," *Lang*, 125 F.3d at 799; *Tremain v.*

7   *Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999), and a failure to provide the claimant with a full

8   and fair review and the failure to follow plan procedures. *See Friedrich v. Intel*, 181 F.3d 1105,

9   1110 (9th Cir. 1999).

10                                    **ANALYSIS**

11  The ERISA plan at issue here unambiguously provides Unum with discretion to determine

12  whether a claimant is entitled to benefits and to interpret the terms and provisions of the policy.

13  Under the plan, "Unum has discretionary authority to determine . . . eligibility for benefits and to

14  interpret the terms and provisions of the policy." (Administrative Record ("AR") at 217.) Plaintiff

15  asserts that the policy does not confer discretionary authority upon Unum for three reasons: 1) the

16  plan was not properly amended to include the discretionary language; 2) the California Department

17  of Insurance has not approved the discretionary language; and 3) the discretionary language is found

18  only in the certificate, not the policy, which makes it ambiguous. Additionally, Plaintiff argues that

19  *de novo* review should apply because Unum has a conflict of interest that affected the decision to

20  deny benefits.

21  **A.   Discretionary Authority**

22  Each of Plaintiff's three arguments regarding Unum's discretionary authority lack merit.

23  First, Plaintiff's argument that the plan was never properly amended is irrelevant to the issue of the

24  proper standard of review. The discretionary authority language is present in both the previous

25  version and the amended version of the plan.[1] Therefore, regardless of whether or not the plan was

26  ─────────────────

27      [1]Unum attached the 1995 document as Exhibit A. Plaintiff requests that the Court strike the
    document and not consider it because it is not part of the administrative record. *See Banuelos v.*
28  *Construction Laborers Pension Trust Funds for Southern California*, 382 F.3d 897 (9th Cir. 2004)
    (holding that plan documents not part of the administrative record will not be considered by the court).

                                              4

1  properly amended, and regardless of which version will govern, it does not affect the existence of
2  the discretionary language.

3  Second, Plaintiff's argument that Unum cannot establish that the California Department of
4  Insurance ("DOI") has approved the discretionary language in question is of no consequence to the
5  standard of review. The clause containing the discretionary language existed in both the policy form
6  approved in 1995 and the 2000 policy form that Plaintiff asserts was not approved. If the 2000
7  policy form was not approved, the plan would be voidable, as a violation of the California Insurance
8  Code § 10270.9, which requires the Commissioner to approve the terms of any group disability
9  policy issued or delivered in California. However, even if the plan was voidable, the discretionary
10 clause would not be severable from the policy. *Horn v. Provident Ins. Co.*, 351 F. Supp. 2d 954,
11 964-65 (N.D. Cal 2004) (holding that because the plaintiff chose to enforce the policy, the only way
12 to avoid enforcement of the discretionary clause was to show that the clause was void on public
13 policy grounds, which the plaintiff failed to do). Therefore, either the plan is valid and contains the
14 clause, or the plan is voidable as a whole. The Court declines to address the issue of DOI approval
15 at this juncture but finds that Plaintiff is entitled to raise this question at a later point if facts exist to
16 support the contention that the plan itself is invalid for lack of approval or improper filing.

17 Third, Plaintiff's argument that the discretionary language is found only in the certificate,
18 and therefore is in conflict with the silence of the policy, is without merit. This precise issue was
19 decided in *Mizzell v. Paul Revere Ins. Co.*, 278 F. Supp. 2d 1146 (C.D. Cal. 2003).[2] In *Mizzell*, the

---

However, *Banuelos* also recognized two exceptions to this general rule: 1) if the court must determine whether a plan administrator's decision was affected by a conflict of interest; or 2) if the standard of review of the administrator's decision is de novo. *Id*. Because this case touches upon both exceptions, Plaintiff's motion to strike is **DENIED**.

Plaintiff also moves to strike Bonnie Williams' declaration. Plaintiff asserts that the Williams declaration is conclusory and lacks sufficient detail. After reviewing the Williams declaration, the Court finds that it is sufficiently detailed and therefore **DENIES** Plaintiff's motion to strike it.

[2]Plaintiff mistakenly relies upon *Mullally v. Boise Cascade Corp. LTD Plan* in an attempt to circumvent *Mizzell's* holding. 2005 U.S. Dist. LEXIS 387 (N.D. Ill. 2005). In *Mullally*, the certificate specifically stated that it was not the policy, but merely evidence of the policy. *Id*. at 14. No such statement exists in the certificate here. Furthermore, in *Mullally*, the policy stated that the certificate would describe the policy limitations, which the court found to conflict with the statement that the certificate was not the policy. Based on this conflicting language, the court found that the insured had not been informed with the requisite clarity of the employer and insurer's discretional authority to deny

United States District Court
For the Northern District of California

discretionary clause was contained in the Benefits Summary sent to plaintiff, but the policy was silent as to discretionary powers, as is the situation in this case. The *Mizzell* court found that "[s]ilence does not create a conflict." *Id*. at 1149. The court further noted that the policy would override the Benefits Summary. However, this was of no consequence because, as the *Mizzell* court noted, there is nothing to override. *Id*. "The Court believes that the plan documents should be read as a whole . . . ." *Id*.

The Court agrees with the reasoning in *Mizzel*. Therefore, because Plaintiff has pointed to nothing in the policy that conflicts with the discretionary authority clause contained in the certificate, the Court finds that the discretionary authority clause is valid and enforceable.

**B.     Conflict of Interest**

Plaintiff also argues that the standard of review in this case should be *de novo* because Defendants were operating under a conflict of interest that contributed to the denial of benefits. *See Atwood v. Newmont Gold*, 45 F.3d 1317, 1322-23 (9th Cir. 1995). Under Ninth Circuit law, there is an apparent conflict of interest where a long-term disability policy is both funded and administered by the defendant. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 943 (9th Cir. 1999). While Unum is not the plan administrator, Unum concedes that since it is the claims review fiduciary, the same "apparent conflict" analysis applies.

However, the presence of an apparent conflict does not automatically remove the deference courts accord to ERISA administrators who are authorized to interpret the plan's provisions. *Id*. Only the demonstration of a serious conflict will result in heightened scrutiny. *Id*. To make such a showing, Plaintiff "must come forward with 'material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary.'" *Alford v. DCH Foundation Group Long-Term Disability Plan*, 311 F.3d 955, 957 (9th Cir. 2002) (citation omitted). If Plaintiff makes this

---

claims. *Id*. at 14. Here, there is no such conflicting language in the policy.

Plaintiff also cites *Kearny v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) in support of her argument, but in *Kearny*, there was no discretionary authority clause, only the statement that "Standard will pay disability benefits 'upon receipt of satisfactory written proof that you have become DISABLED.'" *Id*. at 1088. The defendant attempted to argue that "satisfactory" meant it was up to its discretion, an argument which failed and is not applicable here.

1   showing, then Unum must produce evidence that the conflict did not affect its decision to deny the
2   claim. *Id.*

3   Plaintiff asserts that Unum provided conflicting reasons for denying Plaintiff benefits, and
4   further asserts that this constitutes material, probative evidence of a breach of the administrator's
5   fiduciary obligations. The Court disagrees.

6   Plaintiff relies on *Lang v. Long-Term Disability Plan* for support, however, the present case
7   is distinguishable from *Lang*. 125 F.3d 794 (9th Cir. 1997). The distinguishing factor is that in
8   *Lang*, the inconsistency was in the *method* of determinating when a disability was caused by a
9   mental disorder. In *Lang*, the defendant initially stated that the plaintiff's benefits were terminated
10  because she did not have fibromyalgia. *Id*. at 799. The defendant's view at that time was that the
11  plaintiff had not shown that her disability was "caused or contributed to" by a physical ailment. *Id*.
12  On review, when confronted with clear evidence from her treating physician that she did suffer from
13  a physical ailment–fibromyalgia–the defendant took the position that the plaintiff would have to
14  make a further showing that the fibromyalgia "in and of itself" was disabling. *Id*. The defendant
15  also justified its denial on the theory that, regardless of the cause of the disability, the critical
16  determinants of whether a person was afflicted with a "mental disorder" were symptoms and not
17  causes. *Id*.

18  Here, in contrast to *Lang*, Unum consistently gave the same factors for its determination that
19  Plaintiff was not disabled. While different possible accommodations were given in the three denial
20  letters sent to Plaintiff, the reason for denial remained the same; that reasonable accommodations
21  existed that Plaintiff could utilize to perform the task of pipetting. If Plaintiff wishes to contend that
22  the accommodations themselves were not reasonable, she is so entitled, however, this does not affect
23  the standard of review.

24  Plaintiff also argues that Unum failed to engage in a "meaningful dialogue" with Plaintiff,
25  and did not give Plaintiff a full and fair review process. In support of this assertion, Plaintiff relies
26  upon *Friedrich v. Intel Corp.*, 181 F.3d 1105 (9th Cir. 1999). In *Friedrich*, an "inadequate
27  dialogue" was found where the defendant failed to follow internal procedure, failed to provided the
28  plaintiff with sufficient notice of the denial of his claim, and provided an unfair review procedure.

7

1  *Id*. at 1100.  Specifically, the plan administrator did not provide a claim packet that would have
2  given the plaintiff notice that he was required to apply for benefits and the criteria for benefits
3  determinations.  *Id*.  The plaintiff did not know the defendant was even reviewing his claim, and did
4  not submit anything regarding his claim until it had already been denied.  *Id*.

5         In contrast to the situation in *Lang*, Unum advised Plaintiff of its decision to deny her claim
6  for long-term disability benefits by a letter in which Unum provided the definition of disability and
7  detailed the medical and vocational information on which the denial was based.  Additionally, the
8  letter invited Plaintiff to send additional information to Unum for review and instructed Plaintiff
9  how to submit an appeal.  Plaintiff appealed Unum's determination, after which Unum
10 acknowledged receipt of Plaintiff's request for an appellate review, and provided the requested
11 documents.  Unum then notified Plaintiff of the time frame for the review, and later advised Plaintiff
12 of an extension of 60 days.  Unum notified Plaintiff that the denial of her claim for long-term
13 disability benefits was upheld on appeal in a letter which again set forth the definition of disability
14 and detailed the medical and vocational information on which the denial was based.  Following the
15 appeal, Plaintiff submitted additional information for Unum to review, and after a review of the
16 additional information, Unum advised Plaintiff by letter that the previous decision to deny benefits
17 was correct and would be upheld.  The numerous letters and explanations Unum provided to
18 Plaintiff at every step of the claim process do not compare to the complete lack of communication in
19 *Friedrich*, and cannot be construed to show a lack of "meaningful dialogue."[3]

20        Therefore, the Court finds that Plaintiff has not met her burden of putting forth material,
21 probative evidence tending to show that the fiduciary's self interest caused a breach of the
22 administrator's fiduciary obligations to her.

### CONCLUSION

---

[3] Additionally, the *Friedrich* court based its finding that the plaintiff was not given a full and fair appeals procedure under 29 U.S.C. § 1133(2) on the fact that the appeals committee only had raw data from the plaintiff's physicians, which denied Friedrich the opportunity to demonstrate disability on the basis of Chronic Fatigue Syndrome.  *Friedrich*, 181 F. 3d at 1110.  Here, the appeals committee had access to all of the records submitted by Plaintiff, including detailed vocational report done by an expert hired by Plaintiff, which followed up with biologists spoken to by Unum.  The lack of records and review in *Friedrich* does not compare to the extent of the records here, and the additional review given to Plaintiff upon the submission of further records.  The Court finds that Plaintiff received a full and fair appeals process.

8

For the foregoing reasons, the Court finds that the record does not demonstrate a sufficient conflict of interest for a heightened standard of review to apply.  As such, the Court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motion, and finds that Defendants' adverse benefits decision will be reviewed for abuse of discretion.

**IT IS SO ORDERED.**

Dated: June _24_ , 2005                              /s/_____
                                                                     MARTIN J. JENKINS
                                                                     UNITED STATES DISTRICT JUDGE